[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16233

_____

D.C. Docket No. 02-00225-CV-HTW-1

TERESA ARNOLD,
as next friend of her children,

Plaintiff-Appellee,

versus

JIM MARTIN, in his capacity as the Commissioner
of Georgia Department of Human Resources,
ROBERT RIDDLE, in his capacity as the Director
of the Georgia Child Support Enforcement,

Defendants-Appellants.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

(May 25, 2006)

Before TJOFLAT and KRAVITCH, Circuit Judges, and MILLS*, District Judge.

_____

* Honorable Richard Mills, United States District Judge for the Central District of Illinois,
sitting by designation.

PER CURIAM:

In her complaint in this case, Teresa Arnold, a former recipient of child

support under the Temporary Assistance to Needy Families ("TANF") program,[1]

seeks monetary and injunctive relief under 42 U.S.C. § 1983 against Jim Martin

and Robert Riddle, in their official capacities as program administrators for the

State of Georgia ("the State"),[2] for failing to comply with the program's

---

[1] The TANF block grant program is an intricate federal-state government program that is part of the expansive Personal Responsibility and Work Opportunities Reconciliation Act of 1996, 42 U.S.C. § 601, et seq. Congress enacted TANF pursuant to its Spending Clause power. If a state elects to receive federal funds for welfare assistance and voluntarily elects to participate in the program, the state is required to submit a plan demonstrating its compliance with TANF, and the state must follow that plan. 42 U.S.C. §§ 602(a), 652(a)(3). The state must certify that it operates a child support enforcement program consistent with the requirements of Title IV-D of the Social Security Act, 42 U.S.C. § 602(a)(2), and it must run a disbursement unit for the collection and disbursement of payments under support orders. 42 U.S.C. § 654b(a).

The State of Georgia accepted these conditions and began operation of the TANF block grant in January 1997. All applicants for TANF assistance, such as Arnold, must assign to the state any right to establish and collect child support for all persons for whom TANF is sought. See 42 U.S.C. § 608(a)(3)(A). Once a family receives assistance, if the state receives more child support than money paid through the TANF block grant, the statute indicates that the participating state may either retain the excess or distribute the "GAP" payment portion to the TANF recipient. 42 U.S.C. § 657(a)(1)(B). The State of Georgia asserts that it chose to make GAP payments to families rather than retain the additional child support.

Monies from income tax intercepts from the non-custodial parent are retained by the state to repay any TANF arrearage due to the state. The family therefore only receives money intercepted from taxes after the state is paid. 42 U.S.C. § 664(a), 657(a)(2)(B)(iv). States are required to send notices to the program recipients of the amount of child support collected by the state and the amount retained. 42 U.S.C. § 654(5). The state may not retain more in support than it has paid in assistance to the family. 42 U.S.C. §§ 608(a)(3), 657(a)(1).

[2] Jim Martin, Commissioner of the Georgia Department of Human Resources, is the administrator of the Temporary Assistance to Needy Families Program in Georgia. Robert Riddle, Director of the State's Child Support Enforcement Office, is responsible for the administration of the collection and distribution of child support payments.

requirements.[3] The State moved the district court to dismiss Arnold's complaint on the grounds that TANF created no individual rights enforceable under § 1983, and that the Eleventh Amendment barred her claim for damages, whether awarded in the form of a money judgment or via an injunction requiring the State to turn over the money she seeks.

After the State filed its motion to dismiss, Arnold abandoned her claim for monetary relief, but continued to pursue prospective injunctive relief.[4] In subsequently ruling on the State's motion to dismiss, then, all the court had to determine was whether TANF created rights enforceable under § 1983 and

---

[3] Arnold is a Georgia resident and the divorced mother of two minor children. She received funds under the TANF program from April 1998 to November 1999, when she became gainfully employed. At that time, her TANF benefits ceased. In September 2000, the State informed Arnold that, because of an agency error, she received too much child support during the time she was TANF eligible. She disagreed, and a hearing was convened before an administrative law judge ("ALJ") to determine whether the State could recoup the alleged overpayment from her current child support payments (which she was no longer receiving under TANF). The ALJ ruled against the State; Arnold had been underpaid, rather than overpaid, in the sum of $1,987.45. Because Arnold had not claimed the underpayment in responding to the State's claim, however, the ALJ did not order the State to compensate Arnold for the underpayment. Arnold thus brought this action in the district court on January 14, 2002, in an effort to recover the underpayment, $1,987.45. Relying on 42 U.S.C. § 1983 as the remedial statute, Arnold sought the recovery of this sum and an order enjoining the State from wrongfully retaining future TANF payments.

[4] The district court's order of March 24, 2004, denying the State's motion to dismiss, states, at 7: "plaintiff contends that she is not seeking money damages," and that "she seeks to enjoin prospectively the state from the alleged wrongful retention of child support payments for children and from failure to send out monthly notices." In short, although Arnold's complaint sought a monetary recovery – thus giving rise to the Eleventh Amendment issue – by the time the district court entered the order before us, Arnold abandoned her claim for damages. All that remained was her claim for prospective injunctive relief.

3

whether Arnold, who was no longer a TANF recipient, nonetheless had standing to seek prospective injunctive relief on behalf of herself and actual or potential TANF beneficiaries. In an order entered on March 24, 2004, the district court held that TANF created the rights Arnold asserted, and apparently assuming that she had standing to pursue prospective injunctive relief, denied the motion to dismiss.[5] The State then moved the district court to enter an order under 28 U.S.C. § 1292(b), so that it could immediately appeal the court's ruling. The court granted the motion, and we, in turn, granted the State's application to appeal.

A decision recently handed down by a panel of this court, Arrington v. Helms, 438 F.3d 1336 (11th Cir. 2006), holds that TANF does not create private rights of action enforceable under § 1983. The problem we would create if we summarily disposed of this case on the merits under Arrington, however, is that, in doing so, we would be acknowledging (albeit tacitly) that Arnold has standing to pursue prospective injunctive relief to prevent the State from wrongfully

---

[5] Regarding the matter of Arnold's standing, the court's March 24, 2004 order stated the following, at 12: "the plaintiff has no standing to challenge the State's failure to send out notices under TANF as she is no longer eligible to receive payments under the statute." Addressing the State's Eleventh Amendment argument, the order states, again at 12: "the court finds that the Amendment does not bar the plaintiff's claim for an injunction against the prospective retention of child support payments wrongfully withheld." In using the words "no standing" in dealing with the failure-to-send-out-notices issue, the court implied that Arnold had standing to sue over the State's improper retention of child support payments. The court may have assumed that she had standing because the State, in its motion to dismiss and accompanying memorandum, did not assert that she lacked standing.

4

withholding child support payments. Such standing is necessary; otherwise, we lack jurisdiction under Article III to entertain this appeal (and the district court likewise lacks jurisdiction). Precedent obligates us to determine on our own initiative whether Arnold has standing. See, e.g., Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005). The parties' failure to raise the issue is of no moment. See id.; see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230, 110 S. Ct. 596, 607, 107 L. Ed. 2d 603 (1990). Because we conclude that Arnold lacks standing, we decide this appeal on those grounds.

Arnold does not have standing to claim prospective injunctive relief under § 1983, based on an alleged federal right created by TANF, because she is no longer eligible to receive TANF benefits. The focus of the standing inquiry is "'whether the plaintiff is the proper party to bring this suit.'" Bochese, 405 F.3d at 981 (quoting Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). Therefore, to establish constitutional standing under Article III, Arnold must make three showings: (1) that she has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is a "causal connection between the injury and the conduct complained of"– i.e., the injury is "fairly traceable" to the defendants' conduct; and (3) that it is likely that

5

her injury will be "redressed by a favorable decision." <u>Dillard v. Baldwin County Comm'rs</u>, 225 F.3d 1271, 1275 (11th Cir. 2000) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 2136-37, 119 L. Ed. 2d 351 (1992)) (internal quotation marks and citations omitted).

Because she is no longer TANF-eligible, Arnold is not currently suffering an injury in fact, nor is she being threatened with future injury under the federal statute. She currently has no legally protected interest under TANF. <u>See</u> <u>Dillard</u>, 225 F.3d at 1275. The court's entry of prospective injunctive relief based on TANF would therefore not redress any <u>future</u> harm Arnold might suffer. <u>See</u> <u>Lujan</u>, 504 U.S. at 560-61, 112 S. Ct. at 2136-37; <u>Bochese</u>, 405 F.3d at 976. She attempts to argue that the State continues to collect child support for her children through the state office of Child Support Enforcement, and that they continue to retain past benefits collected under TANF. The fact remains, however, that because she no longer receives TANF benefits, there is no federal law basis for prospective injunctive relief. We cannot fashion an injunctive order to remedy <u>future</u> harm because Arnold has not shown that she will likely suffer such harm.

Arnold's claims for such prospective injunctive relief pursuant to 42 U.S.C. § 1983 and TANF therefore must be dismissed for lack of Article III standing.

The district court's March 24, 2004 order is therefore reversed and this case is remanded with the direction that the court dismiss Arnold's complaint.

SO ORDERED.